IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MELINDA R. K.[1],**

      **Plaintiff,**

v.

      Civil Action 2:21-cv-4095
      Judge Michael H. Watson
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Melinda R. K., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), Plaintiff's Reply (ECF No. 17), Plaintiff's Notice of Withdrawal of Issue (ECF No. 18), and the administrative record (ECF No. 6).  For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## I. BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI in January 2018, alleging that she has been disabled since November 3, 2017, due to a severe right knee injury, torn/damaged rotator cuff in her left shoulder, right side carpel tunnel syndrome, back injury, neck injury, depression and anxiety. (R. at 234-246, 279.) Plaintiff's applications were denied initially in August 2018 and upon reconsideration in September 2018. (R. at 96-183.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 184-185.) Plaintiff, who was represented by counsel, appeared and testified at a telephone hearing held on June 23, 2020. (R. at 59-95.) A Vocational Expert ("VE") also appeared and testified. (*Id.*) Administrative law judge Deborah F. Sanders (the "ALJ") issued a decision finding that Plaintiff has not been under a disability since November 3, 2017. (R. at 7-53.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) This matter is properly before this Court for review.

## II. HEARING TESTIMONY

The ALJ summarized Plaintiff's relevant hearing testimony as follows:

[Plaintiff] alleges chronic back and neck pain, for which she has received chiropractic care.

\*\*\*

[Plaintiff] reported that she is able to exercise in July 2018. [Plaintiff] described working out in April 2019. [Plaintiff] endorsed exercising five to six times a week in April 2019. [Plaintiff] reported working out regularly in May 2019. [Plaintiff] described regularly exercising at a gym in January and February 2020.

(R. at 33, 36 (internal citations omitted).)

2

### III. MEDICAL RECORDS

The ALJ summarized the relevant medical records[2] as follows:

[Plaintiff] alleges chronic pain in her knees with crepitus, effusion, and decreased range of motion, for which, in addition to surgical intervention on her right knee, she has received injections and physical therapy. [Plaintiff] has left quadriceps atrophy and positive McMurray sign and test results noted at different times. [Plaintiff] had positive right knee Lachman, McMurray, and drawers sign and test results, on one occasion. [Plaintiff] had gait disturbance such as mild limp and use of crutches noted after her right knee surgery. [Plaintiff] reports pain with crouching and steps.

\*\*\*

There is no objective medical evidence such as diagnostic imaging results documenting impairment of [Plaintiff's] spine. [Plaintiff] repeatedly had negative and normal Spurling and straight leg raising test results. There is no evidence documenting atrophy of the back or neck muscles. [Plaintiff] had negative and normal drawers, Homan, Lachman, straight leg, valgus, and varus sign and testing results at different times. [Plaintiff] has good right quadriceps tone, with no atrophy. [Plaintiff] did not demonstrate right knee effusion at times.

[Plaintiff] reports only mild 3/10 spinal pain. [Plaintiff] had normal range of motion and strength of her back, cervical spine, and neck, at different times. [Plaintiff] did not use ambulatory aids in November 2017. [Plaintiff] had normal gait in February 2018. [Plaintiff] had normal gait in June and July 2018. [Plaintiff] ambulated independently with no gait problems in July 2018. [Plaintiff] had normal gait with no problems walking in November and December 2018. [Plaintiff] had normal gait on her heels and toes in July, September, and November 2019, as well as January and February 2020. [Plaintiff] repeatedly had negative musculoskeletal and neurological examination results, with good and normal balance, coordination, reflexes, sensory, and strength. [Plaintiff] was consistently noted as doing well and improving with fair pain control without medication, and no issues or setbacks after her right knee surgery. [Plaintiff] had full right knee range of motion with intact motor and sensory at different times. [Plaintiff] was discharged from physical therapy for not being seen for more than 30 days, which would not be expected if her pain complaints occur at the duration, frequency, and intensity she alleges. [Plaintiff] has normal right hip and lower leg. [Plaintiff] had normal left knee examination results in June 2018. [Plaintiff] has intact left knee motor and sensory. [Plaintiff] repeatedly had negative gastrointestinal examination results, with no abdominal pain, constipation, diarrhea, nausea, and vomiting. [Plaintiff] denied any

---

[2] Because Plaintiff's Statement of Errors, ECF No. 11, pertains only to her physical issues, the Undersigned's discussion is limited to the same.

> history of diabetes mellitus on one occasion. [Plaintiff] repeatedly denied and did not demonstrate chronic edema. [Plaintiff] denied experiencing hypertension at different times. [Plaintiff] does not experience anemia and deep vein thrombosis. [Plaintiff] has exercise capacity for greater than 4.00 metabolic equivalent of tasks. [Plaintiff] repeatedly had negative cardiovascular and respiratory examination results, with pulse oximetry of at least 93% on room air, normal breath sounds, and no chest pain, shortness of breath, and wheezing. There is no evidence of end organ damage attributable to [Plaintiff's] obesity.

(R. at 33, 38 (internal citations omitted).)

### IV. ADMINISTRATIVE DECISION

On September 16, 2020, the ALJ issued the non-disability determination. (R. at 7-53.) First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022. (R. at 12.) Then, at step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in substantially gainful activity since November 3, 2017, the alleged onset date of disability. (*Id.*) The ALJ found that Plaintiff has the following severe combination of impairments: spinal disorders, degenerative joint disease of

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

the knees, and obesity. (*Id.*) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 30.)

Before proceeding to step four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, [the ALJ] finds that [Plaintiff] has the residual functional capacity to perform light [ ] work as defined in 20 CFR 404.1567(b) and 416.967(b). She can stand and/or walk for up to 30 minutes at a time before changing position for 1 to 2 minutes at a time. Climbing ramps and stairs, crouching, exposure to wetness, and pulling and pushing with the right lower extremity, are each limited to no more than occasionally. She cannot climb ladders, ropes, and scaffolds, crawl, and kneel, and must avoid all work around dangerous machinery or at unprotected heights.

(R. at 32 (internal citation to footnote omitted).) At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform her past relevant work as a warehouse worker, inventory clerk or warehouse supervisor. (R. at 42.) Relying on the VE's testimony, the ALJ concluded at step five that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a labeler, injection mold machine tender, and a routing clerk. (R. at 43.) The ALJ therefore concluded that Plaintiff has not been disabled under the Social Security Act, at any time since November 3, 2017, the alleged onset date. (R. at 44.)

V. **STANDARD OF REVIEW**

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff set forth two assignments of error: first, that the ALJ failed to properly evaluate the opinion evidence of record, and second, that the Social Security Administration's structure is unconstitutional as it violates the separation of powers doctrine. (ECF No. 11 at PAGEID ## 2126-2135.) On May 2, 2022, however, Plaintiff filed a Notice to advise the Court that "after further research and development of the issue by the Courts, she is withdrawing her separation of powers argument." (ECF No. 18.) Accordingly, only Plaintiff's

6

first assignment of error remains pending before the Court.  For the reasons that follow, the Undersigned finds it to be well taken.

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id*.  The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).  Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3).  "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or

---

[4] Plaintiff's application was filed after March 27, 2017.  (R. at 234-246.)  Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c

7

>pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
>(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
>(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

§§ 404.1513(a)(2); 416.913(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations *require* an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. *Id.* If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly

8

the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. §§ 404.1520c(d); 416.920c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and

9

"consistency" for purposes of the post-March 27, 2017 regulations)).

Against that background, the ALJ discussed Rose Backs, PA-C.'s opinion, at length, as follows:

> **The opinions of [Plaintiff's] physician assistant are overall unpersuasive in assessing [Plaintiff's] physical limitations, restrictions, and residual functional capacity as of the alleged onset date of disability. I agree that the evidence documents that [Plaintiff] has no manipulative limitations, and is capable of unlimited sitting, and occasional climbing steps with no crawling and climbing ladders, and these opinions are persuasive to that extent. However, the remainder of these opinions is inconsistent with and unsupported by the totality of the evidence, as discussed above, and unpersuasive to that extent.** As noted above, in assessing a residual functional capacity that does not fully embrace [Plaintiff's] subjective reports of symptoms, we evaluate the duration, frequency, and intensity of those symptoms, considering a number of factors, including objective medical evidence and daily activities (SSR 16-3p). **These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, including entirely or mainly normal objective medical evidence and examination findings that do not support [Plaintiff's] subjective allegations, and activities of daily living in excess of her subjective complaints.** There is no objective medical evidence such as diagnostic imaging results documenting impairment of [Plaintiff's] spine. [Plaintiff] repeatedly had negative and normal Spurling and straight leg raising test results. There is no evidence documenting atrophy of the back or neck muscles. [Plaintiff] had negative and normal drawers, Homan, Lachman, straight leg, valgus, and varus sign and testing results at different times. [Plaintiff] has good right quadriceps tone, with no atrophy. [Plaintiff] did not demonstrate right knee effusion at times. [Plaintiff] reports only mild 3/10 spinal pain. [Plaintiff] had normal range of motion and strength of her back, cervical spine, and neck, at different times. [Plaintiff] did not use ambulatory aids in November 2017. [Plaintiff] had normal gait in February 2018. [Plaintiff] had normal gait in June and July 2018. [Plaintiff] ambulated independently with no gait problems in July 2018. [Plaintiff] had normal gait with no problems walking in November and December 2018. [Plaintiff] had normal gait on her heels and toes in July, September, and November 2019, as well as January and February 2020. [Plaintiff] repeatedly had negative musculoskeletal and neurological examination results, with good and normal balance, coordination, reflexes, sensory, and strength. [Plaintiff] was consistently noted as doing well and improving with fair pain control without medication, and no issues or setbacks after her right knee surgery. [Plaintiff] had full right knee range of motion with intact motor and sensory at different times. [Plaintiff] was discharged from physical therapy for not being seen for more than 30 days, which would not be expected if her pain complaints occur at the duration, frequency, and intensity she alleges. [Plaintiff] has normal right hip and lower leg. [Plaintiff] had normal left knee examination

> results in June 2018. [Plaintiff] has intact left knee motor and sensory. [Plaintiff] repeatedly had negative gastrointestinal examination results, with no abdominal pain, constipation, diarrhea, nausea, and vomiting. [Plaintiff] denied any history of diabetes mellitus on one occasion. [Plaintiff] repeatedly denied and did not demonstrate chronic edema. [Plaintiff] denied experiencing hypertension at different times. [Plaintiff] does not experience anemia and deep vein thrombosis. [Plaintiff] has exercise capacity for greater than 4.00 metabolic equivalent of tasks. [Plaintiff] repeatedly had negative cardiovascular and respiratory examination results, with pulse oximetry of at least 93% on room air, normal breath sounds, and no chest pain, shortness of breath, and wheezing. There is no evidence of end organ damage attributable to [Plaintiff's] obesity. [Plaintiff] reported that she is able to exercise in July 2018. [Plaintiff] described working out in April 2019. [Plaintiff] endorsed exercising five to six times a week in April 2019. [Plaintiff] reported working out regularly in May 2019. [Plaintiff] described regularly exercising at a gym in January and February 2020. **This evidence does not reasonably justify the imposition of exertional, environmental, and postural limitations to the extent this source suggests. This evidence does not reasonably justify additional physical functional limitations and restrictions, and could support a determination that [Plaintiff] is less physically limited than set forth above as of the alleged onset date of disability, and the remainder of these opinions is unpersuasive to that extent. Accordingly, the opinions of [Plaintiff's] physician assistant are overall unpersuasive in assessing [Plaintiff's] physical limitations, restrictions, and residual functional capacity as of the alleged onset date of disability.**

(R. at 37-39 (emphasis added; internal citations omitted).) The ALJ then also discussed Kaitlyn Hogan, CNP's opinion, at length, as follows:

> **The opinions of [Plaintiff's] CNP are overall unpersuasive in assessing [Plaintiff's] physical limitations, restrictions, and residual functional capacity as of the alleged onset date of disability. I agree that the evidence documents that [Plaintiff] has no limitations for reaching above shoulder level, and is capable of occasional climbing steps with no crawling and climbing ladders, and these opinions are persuasive to that extent. However, the remainder of these opinions is inconsistent with and unsupported by the totality of the evidence, as discussed above, and unpersuasive to that extent.** As noted above, in assessing a residual functional capacity that does not fully embrace [Plaintiff's] subjective reports of symptoms, we evaluate the duration, frequency, and intensity of those symptoms, considering a number of factors, including objective medical evidence and daily activities (SSR 16-3p). **These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, including entirely or mainly normal objective medical evidence and examination findings that do not support [Plaintiff's] subjective allegations, and activities of daily living in excess of her subjective complaints.** [Plaintiff] had intact

11

sensory of her upper extremities, could make full fists, palmarly abduct the thumb, and extend her wrists, fingers, and thumb in November 2018, and had 5/5 right thumb palmar abduction, could extend her fingers, wrist, and thumb, and abduct her fingers against resistance, with no thenar atrophy, at that time. [Plaintiff] reported only occasional left-hand pain in December 2018. [Plaintiff] had intact upper extremity sensory and tone with normal range of motion and no atrophy in November and December 2018. [Plaintiff] had 5/5 upper extremity strength in November and December 2018. [Plaintiff] had good result from her right CTS release procedure, with intact sensory throughout the median, radial, and ulnar nerve distributions, and she could fully make a fist, abduct her fingers against resistance, and extend her fingers, wrist, and thumb, with no atrophy, in January 2019. [Plaintiff] reported at that time that her left CTS is asymptomatic. [Plaintiff] had negative and normal upper extremity Hoffman sign and test results in January 2020. [Plaintiff] had negative and normal upper extremity sign and test results, and pain free range of motion of her elbows and shoulders, in January and February 2020. The evidence documents that [Plaintiff] engages in significant activities involving her upper extremities. [Plaintiff] regularly consumes and prepares coffee and meals. [Plaintiff] reported in July 2018 that she is able to perform some household chores and cleaning, including yardwork. [Plaintiff] cares for at least one cat and dog, including providing food and water, letting outside, and cleaning the litterbox. [Plaintiff] reported that she is able to exercise in July 2018. [Plaintiff] described working out in April 2019. [Plaintiff] endorsed exercising five to six times a week in April 2019. [Plaintiff] reported working out regularly in May 2019. [Plaintiff] described regularly exercising at a gym in January and February 2020. [Plaintiff] runs errands and shops in stores. [Plaintiff] performs money management activities such as counting change, handling savings accounts, and using checkbooks and money orders. [Plaintiff] manages her medication without reminders. [Plaintiff] described helping her neighbor with her neighbor's mother on one occasion. [Plaintiff] reported writing a book and regularly sketching on one occasion. [Plaintiff] regularly reads and plays online poker. [Plaintiff] uses electronic mail and the internet. [Plaintiff] is able to use telephones, including cellphones. This evidence does not reasonably justify the imposition of manipulative limitations, let alone the imposition of manipulative limitations to the extent this source suggests. There is no objective medical evidence such as diagnostic imaging results documenting impairment of [Plaintiff's] spine. [Plaintiff] repeatedly had negative and normal Spurling and straight leg raising test results. There is no evidence documenting atrophy of the back or neck muscles. [Plaintiff] had negative and normal drawers, Homan, Lachman, straight leg, valgus, and varus sign and testing results at different times. [Plaintiff] has good right quadriceps tone, with no atrophy. [Plaintiff] did not demonstrate right knee effusion at times. [Plaintiff] reports only mild 3/10 spinal pain. [Plaintiff] had normal range of motion and strength of her back, cervical spine, and neck, at different times. [Plaintiff] did not use ambulatory aids in November 2017. [Plaintiff] had normal gait in February 2018. [Plaintiff] had normal gait in June and July 2018. [Plaintiff] ambulated independently with no gait problems in July 2018. [Plaintiff] had normal

gait with no problems walking in November and December 2018. [Plaintiff] had normal gait on her heels and toes in July, September, and November 2019, as well as January and February 2020. [Plaintiff] repeatedly had negative musculoskeletal and neurological examination results, with good and normal balance, coordination, reflexes, sensory, and strength. [Plaintiff] was consistently noted as doing well and improving with fair pain control without medication, and no issues or setbacks after her right knee surgery. [Plaintiff] had full right knee range of motion with intact motor and sensory at different times. [Plaintiff] was discharged from physical therapy for not being seen for more than 30 days, which would not be expected if her pain complaints occur at the duration, frequency, and intensity she alleges. [Plaintiff] has normal right hip and lower leg. [Plaintiff] had normal left knee examination results in June 2018. [Plaintiff] has intact left knee motor and sensory. [Plaintiff] repeatedly had negative gastrointestinal examination results, with no abdominal pain, constipation, diarrhea, nausea, and vomiting. [Plaintiff] denied any history of diabetes mellitus on one occasion. [Plaintiff] repeatedly denied and did not demonstrate chronic edema. [Plaintiff] denied experiencing hypertension at different times. [Plaintiff] does not experience anemia and deep vein thrombosis. [Plaintiff] has exercise capacity for greater than 4.00 metabolic equivalent of tasks. [Plaintiff] repeatedly had negative cardiovascular and respiratory examination results, with pulse oximetry of at least 93% on room air, normal breath sounds, and no chest pain, shortness of breath, and wheezing. There is no evidence of end organ damage attributable to the claimant's obesity. [Plaintiff] reported that she is able to exercise in July 2018. [Plaintiff] described working out in April 2019. [Plaintiff] endorsed exercising five to six times a week in April 2019. [Plaintiff] reported working out regularly in May 2019. [Plaintiff] described regularly exercising at a gym in January and February 2020. **This evidence does not reasonably justify the imposition of exertional, environmental, and postural limitations to the extent this source suggests. This evidence does not reasonably justify additional physical functional limitations and restrictions, and could support a determination that [Plaintiff] is less physically limited than set forth above as of the alleged onset date of disability, and the remainder of these opinions is unpersuasive to that extent. Accordingly, the opinions of [Plaintiff's] CNP are overall unpersuasive in assessing [Plaintiff's] physical limitations, restrictions, and residual functional capacity as of the alleged onset date of disability.**

(R. at 39-41 (emphasis added; internal citations omitted).)

Plaintiff argues that in finding these opinions to be unpersuasive, "the ALJ took a buck shot approach" by point out "various portions of the record that were allegedly inconsistent with the opinions presented above" and "did not engage in any sort of analysis regarding the mandatory supportability factor." (ECF No. 11 at PAGEID # 2128.) The Undersigned agrees,

13

and notes that the ALJ may have conflated the concepts of supportability and consistency by repeatedly stating that Ms. Backs and Ms. Hogan's opinions were "inconsistent with an unsupported by the totality of the evidence." (R. at 39-41.) To that end, while the Commissioner concedes that "[c]onsistency relates to how the opinions compare to evidence from other medical and nonmedical sources," the Commissioner also argues that "the ALJ also expressly considered whether Ms. Hogan's opinions were supported *by the record*." (ECF No. 16 at PAGEID ## 2166 n.7, 2168 (emphasis added); *see also id.* at PAGEID # 2172 ("Put another way, the ALJ considered *the medical record* and found that it did not support Ms. Hogan's explanation for her opined limitations.") (emphasis added), # 2174 (arguing that the ALJ "correctly determined that Ms. Backs' opinion was 'unsupported *by the totality of the evidence*.'") (emphasis added).)

      Indeed, in the nearly four pages of "analysis" devoted to these opinions, the ALJ cites several dozen (if not more than one hundred) medical records from throughout the record. Nevertheless, the ALJ does not cite or discuss Ms. Backs or Ms. Hogan's objective findings. As a result, the ALJ's discussion only addresses the consistency of Ms. Backs and Ms. Hogan's opinions, and says nothing about the supportability of the opinions. For the ALJ to have adequately discussed the supportability of Ms. Backs or Ms. Hogan's opinions, the ALJ needed to evaluate what Ms. Backs or Ms. Hogan's said they had based their opinions on – not simply how their opinions compared to the record evidence as a whole. *See Reusel*, 2021 WL 1697919, at *7 n.6 (discussing that an adequate "supportability" discussion "evaluat[ed] what [the doctor] said he based his opinion on," while a "consistency" discussion "compared the opinion to the evidence as a whole"). The ALJ did not do so.

14

In response, the Commissioner argues that "[t]he problem with [Plaintiff's] argument is that *no such supporting explanation exists*" because Ms. Backs' opinion was simply a checkbox form with one handwritten note that Plaintiff was diagnosed with 'right knee osteoarthritis.'" (ECF No. 16 at PAGEID # 2173 (emphasis in original) (citing R. at 1003).) The Undersigned agrees with the Commissioner on this narrow point, as Ms. Backs' Medical Source Statement is nothing more than a checklist form which courts throughout the Sixth Circuit have found to be unpersuasive and internally unsupported. *See Zachariah G. v. Comm'r of Soc. Sec.*, No. 2:21-CV-1600, 2022 WL 883769, at *9 (S.D. Ohio Mar. 25, 2022), *report and recommendation adopted*, No. 2:21-CV-1600, 2022 WL 2339444 (S.D. Ohio June 29, 2022) ("[B]ecause the statement was in the form of a checklist, without any additional comments or annotation, it lacked any supporting explanations or citations to relevant medical evidence, which are central to the supportability factor."); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-CV-01290-CEH, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) ("Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion.") (citing cases); *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (stating that check-box opinions are "weak evidence at best") (citations omitted)).

But the same cannot be said for Ms. Hogan's opinions. While Ms. Hogan also completed Medical Source Statements in a similar checkbox format, she then supplemented the Medical Source Statements with written narratives summarizing her opinions. (*See* R. at 1976 (January 13, 2020 opinion), 2019 (June 3, 2020 opinion).) In these narrative opinions, Ms. Hogan set forth various objective evidence and observations which formed the bases for her opinions, including that Plaintiff "ambulates with a limp and often has bilateral swelling in both lower extremities," that her "range of motion [is] significantly limited by pain and exacerbated by

15

repeated movements in the hands and wrist," and that severe pain and instability limits her ability to sit, stand, or walk for prolonged periods of time. (*Id.*) The ALJ, however, did not address any of these observations in her evaluation of Ms. Hogan's opinions,[5] and instead only focused on the consistency of Ms. Hogan's opinions against the totality of the record.

Given this, it is well settled that the ALJ's failure to discuss the supportability of Ms. Hogan's opinions requires remand, because "without fuller explanation, this court cannot engage in meaningful review of the ALJ's decision." *Reed v. Comm'r of Soc. Sec.*, No. 3:20-CV-02611-CEH, 2021 WL 5908381, at *6 (N.D. Ohio Dec. 14, 2021) (quoting *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *8 (N.D. Ohio June 3, 2021)); *see also Jacob B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-617, 2022 WL 130761, at *8 (S.D. Ohio Jan. 14, 2022) ("In the absence of a sufficient explanation of supportability and consistency with the record as a whole, the Court cannot conclude that the ALJ's consideration of Dr. Rush's opinion is supported by substantial evidence . . . . Accordingly, the ALJ's decision must be reversed and remanded for further proceedings to properly analyze Dr. Rush's medical opinions pursuant to 20 C.F.R. § 404.1520c."). Accordingly, Plaintiff's assignment of error is well taken.

---

[5] The Undersigned finds that the Commissioner distorts the ALJ's decision by stating that "the ALJ expressly considered Ms. Hogan's treatment notes and the written explanations accompanying her opinions" and "[t]he ALJ explained that these very treatment notes—provided by Ms. Hogan—did not support Ms. Hogan's extreme opinions.") (ECF No. 16 at PAGEID # 2169.) While the Undersigned agrees that the ALJ *acknowledged* the existence of Ms. Hogan's narrative opinions (albeit merely by way of a single citation), the ALJ ignored the objective medical record evidence discussed therein and focused instead her discussion on the rest of Plaintiff's medical history. (*See* R. at 39-41.) Contrary to the Commissioner's position, the ALJ simply did not discuss Ms. Hogan's objective findings, let alone analyze how those findings supported (or did not support) Ms. Hogan's ultimate opinions.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: July 14, 2022                                   /s/ *Elizabeth A. Preston Deavers*
                                                                Elizabeth A. Preston Deavers
                                                                United States Magistrate Judge